| | |
|---|---|
| ROBERT C. CHRISTIE,<br><br>                Plaintiff,<br>vs.<br><br>NATIONAL INSTITUTE FOR NEWMAN STUDIES, CATHARINE RYAN; DREW MORGAN, HENRY GAILLIOT; AND DAVID ABERNETHY,<br><br>                Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Case No.<br><br>3:16-CV-06572-FLW-TJB |

## BRIEF ON BEHALF OF PLAINTIFF

## ROBERT C. CHRISTIE

Rubenstein, Meyerson, Fox,
Mancinelli, Conte & Bern, P.A.
One Paragon Drive, Suite 240
Montvale, New Jersey 07645
(201) 802-9202

*ON THE BRIEF*:
Andrew P. Bolson
Attorney I.D. No. 012792010

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES……………………………………………………….....   –ii–

Preliminary Statement……………………………………………………………….   1
Procedural History and Statement of Facts………………………………………….   1
LEGAL ARGUMENT………………………………………………………………   3

    A. DEFENDANTS HAVE SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF NEW JERSEY TO SATISFY THE STANDARD SET FORTH BY *INTERNATIONAL SHOE*……………………   3

    B. FUNDAMENTAL FAIRNESS DICTATES THAT THIS MATTER SHOULD BE HEARD IN THE STATE OF NEW JERSEY…………………..   7

    C. IT IS PREMATURE TO DISMISS THE INDIVIDUAL DEFENDANTS AS THE ROLE OF THE INDIVIDUAL TORTFEASORS HAS YET TO BE FULLY DETERMINED………………………………………………….   9

CONCLUSION………………………………………………………………………..   10

## TABLE OF AUTHORITIES

**CASES**

|  | PAGE |
|---|---|
| *Calder v. Jones*<br>465 U.S. 783 (1984).............................................................. | 5 |
| *Database America, Inc. v. Bellsouth Advertising & Pub. Corp.*<br>825 F.Supp. 1195 (D.N.J. 1993).............................................. | 3, 9 |
| *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*<br>326 U.S. 310 (1945).............................................................. | 3, 7, 9 |
| *Kulko v. Superior Court of California In and for City and County of San Francisco*<br>436 U.S. 84 (1978)................................................................ | 5 |
| *Lautman v. Loewen Group, Inc.*<br>2000 U.S. Dist. LEXIS 8241 (Pa. Ed. 2000).............................. | 9 |
| *Pennzoil Prods. Co. v. Colelli & Assocs.*<br>149 F.3d 197 (3d Cir. 1998)................................................... | 3, 7, 8 |
| *Walden v. Fiore*<br>____U.S. ____ 134 S.Ct. 1115 (2014)....................................... | 4, 5 |

**STATUTES**

| | |
|---|---|
| *N.J.S.A. 2A:38A-1*.................................................................. | 10 |
| *N.J.S.A. 2A:38A-3*.................................................................. | 8 |

## Preliminary Statement

While residing in New Jersey, Robert C. Christie's computer was accessed without his authorization by the Defendants, or an individual or agent acting on Defendants' behalf. Based upon New Jersey's Computer Fraud Statute, New Jersey recognizes that the unauthorized access of a computer located in the State of New Jersey creates sufficient minimum contacts for subjecting a Defendant to personal jurisdiction within the State. New Jersey's statute, combined with Defendants knowing retention of a New Jersey citizen to serve as its Executive Director, makes it fundamentally fair for the Court to hear this matter in the State of New Jersey. Accordingly, Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) must fail as a matter of law.

## Procedural History and Statement of Facts

Robert C. Christie was the Executive Director of the National Institute of Newman Studies ("NINS") between May 2015 and April 2016. *See* Cert. of Robert C. Christie, ¶2. In January 2016, Mr. Christie was diagnosed with cancer and took a leave of absence from his position at NINS. *See* Cert. of Robert C. Christie, ¶3. While completing his cancer treatment, Mr. Christie was terminated without cause. *See* Cert. of Robert C. Christie, ¶4. After his termination, Mr. Christie raised objections and questioned the motivation behind his termination without cause. *See* Cert. of Robert C. Christie, ¶5. After extensive negotiations to avoid any future litigation, the Parties came to an agreement that was set forth in a Confidential Agreement and General Release. *See* Cert. of Robert C. Christie, ¶6.

On June 16, 2016, the day Mr. Christie received the settlement documents for his signature, Mr. Christie was informed by NINS' attorney, David J. McAllister, Esq., that the settlement was being revoked by NINS without further explanation. *Id.* Upon Mr. Christie

1

inquiring about the sudden reversal of NINS' settlement position, Mr. McAllister, responded that "the decision to withdraw the offer was made in large part due to the content of your recent emails to Father Ian Ker." *See* Cert. of Robert C. Christie, ¶7. Soon thereafter, Mr. Christie discovered that someone had accessed his personal emails, deleted hundreds of emails and removed files from his computer. *See* Cert. of Robert C. Christie, ¶8. In a letter to Nelson D. Berardinelli, Esq. dated August 17, 2016, Mr. McAllister confirmed that NINS had reviewed Mr. Christie's personal emails. Mr. McAllister indicated that:

> Simultaneous with his engaging in discussions with co-Trustee, Catharine Ryan, regarding the terms of his departure as NINS's Interim Executive Director, your client – while still a Trustee of NINS – was engaging in contemptible email messaging to a Father Ian Ker (Ker) and at least one other person in which your client disparaged NINS, acted in his own self-interest at the expense of NINS, and affirmatively sought to harm NINS's relationship with third-parties.

Mr. McAllister's letter dated August 17, 2016 is attached to the Cert. of Robert C. Christie as **Exhibit C**. Mr. Christie refutes Mr. McAllister's allegations, maintaining the Defendants utilized his illegally obtained personal emails to fabricate false allegations in order to avoid compensating him under the Confidential Agreement and General Release. *See* Cert. of Robert C. Christie, ¶9.

While discovery will illuminate further details on how NINS obtained Mr. Christie's emails, it is clear that NINS accessed Mr. Christie's computer without his authorization, viewed his personal email correspondence and used those emails to justify the rescission of the Confidential Agreement and General Release.

On October 5, 2016, based upon the NINS' trespass into the State of New Jersey to intentionally access Mr. Christie's computer and the files and communications contained therein, a Complaint was filed on behalf of Mr. Christie in New Jersey. *See* Complaint.

## LEGAL ARGUMENT

According to *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3ᵈ Cir. 1998), "[w]hen a state has general jurisdiction over a party, that party can be haled into court in that state 'regardless of whether the subject matter of the cause of the action has any connection to the forum.'" In this case, Plaintiff does not dispute that NINS lacks the "continuous and systematic" contacts to satisfy the requirements for general jurisdiction. *See Database America, Inc. v. Bellsouth Advertising & Pub. Corp.*, 825 F. Supp. 1195, 1212-13 (D.N.J. 1993). Plaintiff's basis for New Jersey jurisdiction against NINS hinges on a finding of specific personal jurisdiction. As noted in *Pennzoil*,

> "To make a finding of specific jurisdiction, a court generally applies two standards, the first mandatory and the second discretionary. These standards serve to ensure that defendants receive due process as required by the Fourteenth Amendment. First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipated being haled into court there.' Second, assuming minimum contacts have been established, a court may inquire whether 'the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (citations omitted).

*Pennzoil*, 149 F.3d at 201.

For the reasons set forth herein, NINS' contacts with the State of New Jersey and New Jersey's public interest in hearing this matter constitute a sufficient basis for retaining jurisdiction within the State.

### A. DEFENDANTS HAVE SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF NEW JERSEY TO SATISFY THE STANDARD SET FORTH BY *INTERNATIONAL SHOE*.

In accordance with the seminal case, *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945), a defendant must have

3

sufficient minimum contacts with the forum state to "not offend 'traditional notions of fair play and substantial justice.'" In examining what constitutes minimum contacts, the Court looks to the "nature and quality" of the contacts and the circumstances underlying the claim for jurisdiction. *Id.* at 318.

In *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115 (2014), the United States Supreme Court, further refined the nature of the Defendants' contacts that must be established. According to the Court, the Defendant's "relationship must arise out of contacts that the 'defendant himself' creates with the forum state." *See id.* at 1122. In addition, the "minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *See id.* The Court added that "physical presence in the forum state is not a prerequisite to jurisdiction, physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly relevant contact." *See id.*

In this case, the contact subjecting NINS to New Jersey jurisdiction was the accessing of Mr. Christie's computer in New Jersey. While discovery has yet to transpire in this case, it appears that someone from NINS used a "Log-me-in account" to access Mr. Christie's computer, a fact which was confirmed by virtue of Mr. McAllister's correspondence. *See* email from John Panek to Erin Christie dated July 30, 2016 attached to the Cert. of Robert C. Christie as **Exhibit D**; *see also* letter from David J. McAllister, Esq. dated August 17, 2016 attached to the Cert. of Robert C. Christie as **Exhibit C**. In addition to reviewing and deleting Mr. Christie's personal email correspondence, NINS deleted files from the computer and manipulated Mr. Christie's computer to attempt to mask the unauthorized access. *See* email from John Panek to Erin Christie dated July 30, 2016 attached to the Cert. of Robert C. Christie as **Exhibit D**. Files that were deleted include Mr. Christie's manuscript that was saved on his computer. The intentional

4

act of accessing Mr. Christie's emails, his files and the computer in general constitute trespass onto Mr. Christie's property. *See Walden, supra,* 134 S.Ct. at 1122; *see also Calder v. Jones,* 465 U.S. 783, 791 (1984) ("We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California.").

The computer age has upended traditional notions of jurisdiction and trespass. Hypothetically, if instead of hacking Mr. Christie's computer, NINS had unlawfully trespassed onto Mr. Christie's property and entered his home to search his personal papers, jurisdiction would be undisputed. As referenced in *Walden*, the law should not differentiate between physical trespass and trespass into a State conducted through the Internet. In both cases, the Defendant purposefully avails themselves of the jurisdiction of the State in which the trespass occurs.

It is important to note that Mr. Christie did not suddenly move to New Jersey for the purposes of this action. *See contra Kulko v. Superior Court of California In and for City and County of San Francisco,* 436 U.S. 84, 94 (1978). When NINS solicited Mr. Christie to serve as the organization's Executive Director, NINS was aware that Mr. Christie was not going to move to Pennsylvania to serve as Executive Director, but rather he would be traveling back and forth between his home in New Jersey and NINS' headquarters in Pennsylvania. *See* Cert. of Robert C. Christie, ¶12. Not only did NINS accept this arrangement, during his tenure as Executive Director, NINS facilitated Mr. Christie's interstate commute by paying for all of Mr. Christie's travel between Pennsylvania and New Jersey (approximately fifty (50) flights) and for his lodging while he stayed in Pennsylvania for NINS' business. *See id.* Ms. Ryan also authorized

NINS' accountant, at NINS' expense, to prepare and submit all tax paperwork on behalf of Mr. Christie to the State of New Jersey. *See id.*

While Mr. Christie underwent cancer treatment, Ms. Ryan, along with another Defendant, scheduled to travel to New Jersey to meet with Mr. Christie specifically about NINS' business during his period of convalescence. *See* Cert. of Robert C. Christie, ¶13. Moreover, as Mr. Christie was undergoing treatment, Mr. Christie was directed by Ms. Ryan to conduct NINS' business from his home in New Jersey. *See id.*

Defendants argue that NINS cannot be held responsible for Mr. Christie "chos[ing] to live in New Jersey." *See* Defendants Brief, P.8. By pursuing and retaining Mr. Christie, NINS *elected* to hire an Executive Director who resided in New Jersey and commuted to Pennsylvania for work. By knowingly and purposely availing themselves of Mr. Christie's services, which included his services from New Jersey, NINS was fully aware that it could be subject to New Jersey jurisdiction. If NINS did not want to be subject itself to New Jersey jurisdiction, NINS could have required Mr. Christie to relocate to Pennsylvania in order to serve as Executive Director. NINS must not be able to benefit from its relationship with Mr. Christie, a New Jersey resident, while distancing itself from Mr. Christie's jurisdiction when it no longer suits its needs.

Between NINS purposely retaining an Executive Director who lived in New Jersey and the fact that NINS accessed Mr. Christie's computer while both he and the computer were in the State of New Jersey, NINS had full knowledge that its conduct could subject itself to jurisdiction within another state. In fact, Mr. Christie was no longer employed by NINS when these actions occurred, and he has not been in Pennsylvania on NINS' business since March 2016.

## B. FUNDAMENTAL FAIRNESS DICTATES THAT THIS MATTER SHOULD BE HEARD IN THE STATE OF NEW JERSEY.

The second part of the *International Shoe* analysis is a *discretionary* examination of whether finding specific jurisdiction would comport with "fair play and substantial justice." *Pennzoil*, 149 F.3d at 201. According to *Pennzoil*, the fairness factors include:

> the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental social policies – suggest that exercising jurisdiction would be unreasonable in this case.

*Id.* at 207-08.

In this case, it is critical to consider New Jersey's interest "in furthering fundamental social policies" by protecting its citizens from unlawful access to their computer systems. *Id.* In 1984, the State of New Jersey adopted a statute to prevent the exact type of abuse found here. According to the Statute:

> A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefor in the Superior Court and may recover compensatory and punitive damages and the cost of the suit including a reasonable attorney's fee, cost of investigation and litigation:
> a.   The purposeful or knowing, and authorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;
> b.   The purposeful or knowing, and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;
> c.   The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;
> d.   The purposeful or knowing, and unauthorized altering, accessing, tampering with, obtaining, intercepting, damaging or destroying of a financial instrument; or

7

  e. The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.

*N.J.S.A.* 2A:38A-3.

  Notably, New Jersey's statute does not distinguish in-state actors from out-of-state actors because making the distinction would render the statute meaningless. The interest to the State of New Jersey is the prevention of unauthorized access to computers located within the State. Transferring this matter to Pennsylvania would thwart the intent of New Jersey's statute and send a signal that out-of-state actors cannot be held liable in New Jersey for their trespass onto computers within the State. Maintaining New Jersey jurisdiction is especially important in light of the fact that Pennsylvania does not have a statute equivalent to New Jersey's. For these reasons, New Jersey must remain the State of jurisdiction.

  The Defendants have also argued that Pennsylvania is the more appropriate forum because of convenience to the Defendants and because NINS is a non-profit entity. While NINS may argue convenience, such convenience must be weighed against the burden to Mr. Christie. *See Pennzoil*, 149 F.3d at 207-08. While NINS has portrayed itself to be a small non-profit strapped for resources, in reality, NINS is a multimillion dollar organization with substantial resources. *See* Cert. of Robert C. Christie, ¶14. Two of the Defendants/NINS Board members provided the millions of dollars necessary to build the NINS' state-of-the-art facility and maintain this "non-profit" organization. *See id.* These resources are further exemplified by NINS' recent coordination of a symposium that brought together acclaimed scholars from across the world, its ability to pay for Mr. Christie's commute to Pennsylvania and his lodging while in Pennsylvania and its ability to retain a multi-national, AM Law 100 law firm who has an office in New Jersey to defend this action. *See id.* On the other hand, after being terminated from

8

NINS, Mr. Christie has been unemployed and without income save for social security benefits. *See* Cert. of Robert C. Christie, ¶16. Unlike NINS, Mr. Christie does not have the financial resources to travel back and forth from Pittsburgh for this matter. *See id.*

Defendants have attempted to use Mr. Christie's wrongful termination action filed with the Commonwealth of Pennsylvania to suggest that transferring this case would not create an undue hardship. However, that action, which has no relation to NINS' conduct in accessing Mr. Christie's computer, had to be filed in Pennsylvania because that case has no relevance to New Jersey. On this hand, the privacy invasion into Mr. Christie's computers occurred in New Jersey while Mr. Christie **was no longer employed by NINS**. As previously mentioned, Mr. Christie had been terminated in April 2016 and had not been in Pennsylvania on NINS' business since March of that year. Therefore, unlike in the wrongful termination action, the facts underlying the basis for this case all occurred in the State of New Jersey and have no relation to Pennsylvania.

Based upon the relative hardships on the Parties and New Jersey's strong interest in retaining this case, if New Jersey were to retain jurisdiction over this matter, it would not upset "fair play and substantial justice." *See International Shoe, supra,* 326 U.S. at 316; *see also Database America, Inc. v. Bellsouth Advertising & Pub. Corp.,* 825 F. Supp. 1195, 1208 (D.N.J. 1993) (The courts of New Jersey have exercised *in personam* jurisdiction "wherever possible with a liberal and indulgent view if the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice.'").

C. **IT IS PREMATURE TO DISMISS THE INDIVIDUAL DEFENDANTS AS THE ROLE OF THE INDIVIDUAL TORTFEASORS HAS YET TO BE FULLY DETERMINED.**

Here, as in *Lautman v. Loewen Group, Inc.,* 2000 U.S. Dist. LEXIS 8241 (Pa. Ed. 2000), the allegations against the Individual Defendants arise out of their forum-related activities.

Specifically, the Individual Defendants' actions harmed the Plaintiff in New Jersey and the Individual Defendants violated a New Jersey statute, the Computer Related Offenses Act *N.J.S.A.* 2A:38A-1 et seq. While the identity of the individual, or individuals, who engaged in the interference with Plaintiff's personal property on behalf of NINS is unknown at this time, Plaintiff believes that discovery will reveal that the Individual Defendants are the tortfeasors that purposefully and knowingly directed the intrusion of Mr. Christie's computer.

## CONCLUSION

The conduct of NINS in accessing Mr. Christie's computer was purposeful as they intentionally sought to obtain information about Mr. Christie to avoid compensating Mr. Christie according to the terms of the Confidential Agreement and General Release by asserting false allegations against him. While NINS would prefer to litigate this matter in Pennsylvania, by virtue of their actions, they have availed themselves to the laws of the State of New Jersey and have the required contacts to sustain jurisdiction in this State. In availing themselves to the State of New Jersey, NINS cannot deny jurisdiction simply because it is inconvenient for them to do so both from a legal standpoint and from a practical standpoint.

As such, Defendants' Motion to Dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) must be denied.

Respectfully submitted,
RUBENSTEIN, MEYERSON, FOX,
MANCINELLI, CONTE & BERN, P.A.

By: _____
Andrew P. Bolson
On the Brief