**\*FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| ROBERT C. CHRISTIE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. Action No. 16-6572 (FLW) |
| v. | : | |
| | : | |
| NATIONAL INSTITUTE FOR NEWMAN | : | **OPINION** |
| STUDIES, _et al._, | : | |
| | : | |
| Defendants. | : | |

_____:

**<u>WOLFSON, District Judge</u>**:

This matter comes before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) filed by Defendants National Institute for Newman Studies ("NINS"), Catherine Ryan, Drew Morgan, Henry Gailliot, and David Abernathy (collectively "Defendants"), seeking dismissal of the Complaint by Plaintiff Robert C. Christie ("Plaintiff") for lack of personal jurisdiction. On this motion, this Court is faced with the question whether and how a defendant's "virtual" presence and conduct translate into contacts with a particular forum state. For the following reasons, the Court finds that Defendants are subject to personal jurisdiction in New Jersey because of their alleged tortious conduct committed via the Internet, which constituted "virtual contacts" sufficient for specific jurisdiction purposes. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

Plaintiff was formerly employed as the Executive Director of NINS. Compl., ¶ 12. Plaintiff, at all times relevant, resided in New Jersey. *Id.* at ¶ 1. NINS is a non-profit organization with its principal place of business in Pittsburgh, Pennsylvania. *Id.* at ¶ 2. Defendants Catherine Ryan, Drew Morgan, Henry Gailliot, and David Abernathy (the "Individual Defendants"), are all members of NINS's Board of Directors and residents of Pennsylvania. *Id.* at ¶¶ 3–7.

Plaintiff alleges that when he was hired as the Executive Director, Defendants knew that he would continue to reside in New Jersey, and to carry out his job duties, Plaintiff would travel back-and-forth between his home and NINS's headquarter in Pennsylvania. Pl.'s Certification, ¶ 12. As part of this work arrangement, Plaintiff claims that Defendants facilitated and paid for "approximately fifty (50) flights and for [his] lodging while [he] stay[ed] in Pennsylvania for [NINS's] business." *Id.* Similarly, during his tenure as the Executive Director, at the direction of Catherine Ryan ("Ryan"), Chief Member of NINS's Board of Trustees, NINS prepared and submitted Plaintiff's tax paperwork to the State of New Jersey. *Id.*

Nearly a year after being hired as Executive Director, around January 2016, Plaintiff was diagnosed with cancer. Compl., ¶13. Consequently, Plaintiff began treatment and was forced to take a leave of absence. *Id.* at ¶ 13; Pl.'s Certification, ¶ 3. At some point after beginning treatment, Plaintiff claims that Ryan directed him to conduct NINS's business from his home in New Jersey. Pl.'s Certification, ¶ 13. During that time, Ryan

---

[1] The following facts are taken from the Complaint and assumed as true, except where noted. The Court will only recount facts that are relevant to this motion.

and another employee of NINS scheduled plans to travel to New Jersey to meet with Plaintiff to conduct NINS's business. *Id.*

Around April 2016, without Plaintiff's knowledge, NINS hired a new Executive Director to replace Plaintiff. Compl., ¶ 15. Subsequently, Plaintiff was notified by Ryan that Plaintiff was being terminated, which Plaintiff believes was related to his cancer treatment. Pl.'s Certification ¶¶ 4–5; Compl., ¶ 17. At some point thereafter, Plaintiff retained an employment attorney in Pennsylvania relating to his potential wrongful termination claims. *See* Pl.'s Certification, ¶ 9.

Plaintiff and NINS engaged in negotiations to resolve claims Plaintiff may have had against NINS. *Id.* at ¶ 6. An agreement was reached and mailed to Plaintiff in New Jersey. *Id.* The same day Plaintiff received the agreement, which was sent to him in New Jersey via Federal Express, NINS's attorney, in Pennsylvania, emailed Plaintiff revoking the agreement. *Id.* When Plaintiff inquired why the agreement had been revoked, NINS's attorney indicated that, in an electronic correspondence, "the decision to withdraw the offer was made in large part due to the content of your recent emails . . . ." *Id.* at ¶ 7.

Later, Plaintiff "noticed that hundreds of [his] personal email[s] . . . had been deleted."[2] *Id.* at ¶ 8. Plaintiff alleges that the emails served as evidence for his wrongful termination claim. Compl., ¶ 31. Plaintiff avers that he also noticed that files on his personal computer "had disappeared," some of which contained personal documents and an irreplaceable manuscript. Pl.'s Certification, ¶ 8.

---

[2]     According to Defendants, Plaintiff used Yahoo! email services which stores emails on servers in California. Plaintiff does not dispute this assertion.

According to Plaintiff, NINS's letter sent to his attorney is evidence showing that Defendants accessed Plaintiff's computer. That letter read in part:

> Simultaneous with [Plaintiff's] engaging in discussions with [Ryan] regarding the terms of his departure as NINS's Interim Executive Director, [Plaintiff] — while still a Trustee of NINS — was engaging in contemptible email messaging to a Father Ian Ker (Ker) and at least one other person in which your client disparaged NINS, acted in his own self-interest at the expense of NINS, and affirmatively sought to harm NINS's relationship with third parties.

*Id.* at ¶ 9.

Plaintiff alleges that Defendants intentionally and unlawfully accessed, reviewed, and deleted his personal emails and files on his computer. *See* Compl., ¶¶ 24–27. There is no dispute that Defendants' alleged wrongful activities were taken while Plaintiff and his computer were in New Jersey. *Id.* at ¶¶ 30–32. Plaintiff names the Individual Defendants in addition to NINS because, he alleges, as members of NINS's Board of Directors, they approved and oversaw the unlawful intrusions into his emails and files. *Id.* at ¶¶ 7–8. Based on those allegations, Plaintiff asserts violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §1030, *et seq.*, Invasion of Privacy, and violation of New Jersey's Computer Related Offense Act, N.J.S.A. 2A:38A-3. *Id.* at ¶¶ 27–41.

In the instant matter, Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Defendants argue that their conduct related to Plaintiff is insufficient to meet the requisite minimum contacts with New Jersey for them to be subject to personal jurisdiction in this forum. Specifically, Defendants assert that their conduct was not expressly aimed or directed at New Jersey and they have no meaningful connection with New Jersey.

## DISCUSSION

### I.    Standard of Review

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 144 (3d Cir. 1992)). "[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted).

In the context of a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc.*, 384 F.3d at 97; *see also Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003). Still, plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper." *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (quoting *Carteret Sav. Bank, FA,* 954 F.2d at 146). In order "[t]o meet that burden, [plaintiff] must 'establish[ ] jurisdictional facts through sworn affidavits or other competent evidence.'" *Id.* (quoting *Miller Yacht Sales, Inc.*, 384 F.3d at 101 n.6). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citing *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992)).

## II. Personal Jurisdiction

To subject a defendant to personal jurisdiction in New Jersey, Due Process requires that the defendant "have certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "Personal jurisdiction may be exercised under two distinct theories, a defendant's general or claim-specific contacts with the forum." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001); *Bristol-Myers Squibb Co. v. Superior Court*, No. 16-466, 2017 U.S. LEXIS 3873, at *10 (Jun. 19, 2017).

Here, Plaintiff concedes that Defendants "lack[ ] the 'continuous and systematic' contacts to satisfy the requirements for general jurisdiction." Pl.'s Br. 3. Thus, the question before the Court is whether there is claim-specific jurisdiction over Defendants, which "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (alterations original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations and citations omitted)).

### A. Specific Jurisdiction

To examine whether specific jurisdiction exists, courts apply a three-part inquiry:

(1) Defendant's activities must be purposefully directed at the forum;

(2) "[P]laintiff's claim[s] must arise out of or relate to at least one of those specific activities"; and

(3) The assertion of jurisdiction must be reasonable or "otherwise comport[] with fair play and substantial justice."

*Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotations and citations omitted); *Bristol-Myers*, 2017 U.S. LEXIS 3873, at *11. Relevant here, where plaintiff is the focus of an out-of-state defendant's allegedly tortious activity, specific personal jurisdiction is determined by the "effects test" adopted in *Calder*, *see Remick*, 238 F.3d at 258 ("[T]he Supreme Court set forth the 'effects test' for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum."), which inherently assesses whether defendants "purposefully directed [their] activities toward the residents of the forum state or otherwise purposefully avail[ed themselves] of the privilege of conducting activities within the forum State." *IMO Indus., Inc.*, 155 F.3d at 259 (internal quotations and citations omitted); *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 612–16 (E.D. Va. 2002); *see also Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

In this case, Plaintiff alleges that the out-of-state Defendants hacked into his computer and deleted emails and other data, which constitute tortious activity. In that regard, there is no dispute that the *Calder* "effects test" applies here, because whether tortious conduct is committed via the Internet or in more traditional means, does not change the inquiry of the location where Defendants purposefully aimed their alleged cyberactivity. *See Ralsky*, 203 F. Supp. 2d at 612–17; *accord Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (explaining that determinations of minimum contacts should not lead to "[d]ifferent results . . . simply because business is

conducted over the Internet"). Thus, the Court will apply the "effects test" to determine whether it has specific personal jurisdiction over Defendants.

### B.  *Calder* Effects Test

The Third Circuit has explained that the *Calder* "effects test" requires the plaintiff to show:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity;
>
> . . . in order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.

*IMO Indus., Inc.*, 155 F.3d at 265–66 (footnote omitted). "[Knowledge] alone is insufficient to satisfy the targeting prong of the effects test." *Id.* at 266. "And although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, *or some other means*—is certainly a relevant contact." *Walden*, 134 S. Ct. at 1122 (internal citations omitted) (emphasis added).

In *Calder*, petitioners in Florida wrote a libelous article about a California resident that caused harm to her reputation in the California community. "The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Calder*,

465 U.S. at 788–89. Indeed, petitioners' "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. Petitioners wrote an article knowing its "potentially devastating impact upon respondent" in California. *Id.* "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Id.* at 789. Thus, the Supreme Court in *Calder* held that jurisdiction was proper "because of the[ ] intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 791.

Since *Calder*, courts have struggled to apply the "effects test" to conduct other than defamation. Thus, the Supreme Court revisited its test in *Walden*, and stressed that contacts with the forum State must be created by the "defendant *himself*." *Walden*, 134 S. Ct. at 1122 (emphasis original). In doing so, the Court elaborated on the second and third prongs of the *Calder* "effects test"—"brunt of the harm" and "expressly aimed"—explaining that the inquiry must focus "not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125.

In *Walden*, while at an airport in Georgia, petitioner, a Drug Enforcement Agent (DEA), searched respondent and seized a large sum of cash. *Id.* at 1119. Respondent filed a claim against petitioner in Nevada, claiming that his injury occurred in Nevada since he, *inter alia*, could not access his money because of "the delayed return of . . . gambling funds." *Id.* at 1120, 1125. The DEA agent argued that the trial court lacked personal jurisdiction over him. The Supreme Court agreed and explained that the agent "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124. The only nexus to Nevada, the Court found, was the fact that the respondent was a Nevada resident and claimed injury once he returned home to Nevada.

*Id.* at 1125. Indeed, the Court further found that any injury to respondent that continued in Nevada is not jurisdictionally relevant. *Id.* ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."). In that regard, the jurisdictional inquiry, the *Walden* Court explained, must not focus on the plaintiff's contacts with the forum; rather, "it [must] show[ ] that the *defendant* has formed a contact with the forum State." *Id.* at 1125 (emphasis added). Because the search and seizure occurred in Georgia, no part of the DEA agent's conduct giving rise to the respondent's claims created the requisite minimum contacts with Nevada.[3] *Id.*

Indeed, consistent with *Walden*, the Third Circuit has emphasized that to satisfy the *Calder* "effects test," "the plaintiff must show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant *expressly aimed* its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266 (emphasis added). Advisedly, where a defendant's "*only connection* to the forum is the plaintiff's location in the forum," the "Third Circuit has held that specific jurisdiction cannot be exercised over defendants against whom intentional tort claims have been asserted." *Isaacs v. Trustees of Dartmouth Coll.*, No. 13-5708, 2014 WL 4186536, *11 (E.D. Pa. Aug. 25, 2014) (emphasis added) (citing *Marten,* 499 F.3d at 299); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) ("[A]fter *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" (quoting *Walden*, 134 S.Ct. at 1122)).

---

[3] Recently, the Supreme Court in *Bristol-Myer* reconfirmed *Walden*'s holding that for specific jurisdiction to exist, there must be a "connection between the forum and the specific claims at issue." *Bristol-Myer*, 2017 U.S. LEXIS 3873, at *15.

Specific Jurisdiction in the context of torts committed via the Internet requires a more nuanced inquiry under the "effects test." *See Walden*, 134 S. Ct. at 1125 n.9 (indicating that "the very different questions [of] whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State" will be left for another day). Although in different contexts than this case, *i.e.*, hacking, *Remick* and *Marten* are two Third Circuit decisions that apply the *Calder* "effects test" in cases involving Internet claims. Both decisions underscore the Third Circuit's emphasis that tortious conduct — even over the Internet — must be intentionally directed or "expressly aimed" at the forum State.

In *Remick*, the Third Circuit considered specific personal jurisdiction over claims of defamation, misappropriation of image and likeness, tortious interference with a contract, and breach of a contract. Plaintiff Remick agreed to act as special counsel for a boxer for the purposes of procuring and negotiating high profile fights. When the boxer terminated his contract, Remick sued in Pennsylvania the boxer, his agent and the firm with which the agent was associated. The defendants, who were residents of Indiana and Illinois, moved to dismiss for lack of personal jurisdiction. The court found personal jurisdiction over the breach of contract and tortious interference claims, reasoning that the interference claim was "necessarily related to the contract" over which it found it had jurisdiction. As to the two other causes of action that sound in tort — defamation and misappropriation of image and likeness — the Third Circuit held that the "effects test" was not met.

Relevant here, the court applied the "effects test" to the misappropriation claim, which was asserted only against the boxer and his agent. The misappropriation consisted

of posting a single photograph by the boxer on a boxing website without plaintiff's prior authorization. *Remick*, 238 F.3d at 259. Finding that the requirements of *Calder* were not satisfied, the court reasoned that the image was "published throughout the boxing community, not just in [Pennsylvania]" and it did not target "anyone in [the forum] other than [the plaintiff]." *Remick*, 238 F.3d at 259. Therefore, there was no "unique relationship" between the tortious conduct, *i.e.*, misappropriation, and the forum state, and that any resulting harm in the forum was "merely incidental." *Id.* The court concluded that "it cannot be said that the defendants . . . expressly aimed their conduct at [the forum] so that [the forum] was the focal point of the tortious activity." *Id.*

In *Marten*, the Third Circuit reaffirmed its reasoning in *Remick*, emphasizing the importance of where defamatory statements are aimed. *Marten*, 499 F.3d at 298. The plaintiff in *Marten* was enrolled in an internet-based pharmacy program in Kansas, while living in Pennsylvania. *Id.* at 293. After being accused of plagiarism, Marten sued under a defamation theory in his home state of Pennsylvania. *Id.* at 293–94. The Kansas defendants moved to dismiss for lack of personal jurisdiction. *Id.* In explaining the "expressly aimed" element of *Calder*, the Third Circuit reasoned that personal jurisdiction is only proper if the forum State is "the focus of the activities of the defendant out of which the suit arises." *Id.* at 298. Thus, the court stressed that the "express aiming" requirement militates in favor of "specific facts showing a deliberate targeting of [the forum]," and because the Kansas defendants did not expressly aim the allegedly defamatory accusation at the forum, the trial court could not assert personal jurisdiction over the defendant. *Id.*; *see Scott v. Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014) (explaining that there must be evidence of defamatory statements being intentionally directed at the forum).

Based on the body of case law applying *Calder*, and consistent with *Walden*, in this Court's view, the jurisdictional inquiry should focus on where a defendant intended to direct its tortious conduct and whether that defendant knew, or should have known, its activities would be felt in that forum State.

Here, Plaintiff alleges in his CFAA claim, which sounds in tort, that Defendants intentionally and unlawfully accessed his personal files on his computer and his emails hosted on Yahoo! servers. Further, Plaintiff alleges that after gaining access illegally, Defendants then deleted those files and emails. In their motion to dismiss, Defendants argue that they lack the requisite minimum contacts to be subject to personal jurisdiction in New Jersey. In doing so, it does not appear that Defendants dispute the first two element of the "effects test" — that an alleged intentional tort was committed and Plaintiff felt the brunt of the harm in New Jersey or the forum State. The bulk of Defendants' contentions center on the last element — whether they expressly aimed their alleged tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *See Marten*, 499 F.3d at 297.

More specifically, Defendants argue that (1) Plaintiff has not sufficiently alleged facts supporting specific jurisdiction, because Defendants' activities were not conducted in New Jersey, and Defendants did not purposefully avail themselves of the privilege of doing business in New Jersey; and (2) subjecting Defendants to personal jurisdiction in New Jersey would be unfair, because New Jersey and Pennsylvania have a shared interest in the fundamental social policy of protecting nonprofit corporations from the burden of unnecessary costs, and Plaintiff's claims can be conveniently and effectively heard in Pennsylvania making New Jersey's interest in this dispute limited. Finally, Defendants

argue that even if NINS were subject to personal jurisdiction, the Individual Defendants are not. Each argument will be addressed below.

Defendants argue that none of their alleged activities giving rise to this litigation occurred in New Jersey and that they did not physically enter New Jersey. At the outset, the Court rejects Defendant's contention that physical presence is a necessary condition in finding *in personam* jurisdiction; rather, to the contrary, the personal jurisdiction jurisprudence is clear: "physical presence in the forum is not a prerequisite to jurisdiction." *Walden*, 134 S. Ct. at 1122. In fact, the Supreme Court has explained, "physical entry into the State—either by the defendant in person or through an agent, goods, mail, *or some other means*—is certainly a relevant contact," but not required. *Id.* (internal citations omitted) (emphasis added).

Next, Defendants argue that they have not "made any purposeful availment of the laws of New Jersey, or directed any conduct specifically towards that forum." Def.'s Mem. Supp. Mot. to Dismiss, at 3. In making this argument, Defendants focus on two central points: first, Plaintiff's choice to live in New Jersey does not render them subject to jurisdiction in New Jersey; and second, because Plaintiff's Yahoo! email's server is located in California, any alleged access did not occur in New Jersey. These arguments, however, are misplaced.

Defendants are correct that, generally, a plaintiff's choice to reside in New Jersey does not subject defendants to personal jurisdiction in New Jersey. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Marten*, 499 F.3d at 298 ("[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants."). However, Plaintiff's claims do not arise because of his mere decision to be in New Jersey; instead, his claims

arise from allegations that Defendants knowingly hacked Plaintiff's computer in New Jersey, and deleted his personal email correspondence along with other files when Plaintiff and his computer were located in this State.

Indeed, before terminating Plaintiff, Ryan — who knew Plaintiff was recovering from cancer treatment at his residence in New Jersey — had previously directed Plaintiff to work from his home in New Jersey. Pl.'s Certification ¶ 13. Thus, because of their former employment relationship with Plaintiff, Defendants knew that Plaintiff was in New Jersey and expected, or should have expected, that Plaintiff's computer was also in New Jersey. *See IMO Indus., Inc.*, 155 F.3d at 266 (stating that in order to determine where defendant expressly aimed its tortious conduct, defendant's knowledge of where plaintiff would suffer the brunt of the harm should be considered). Indeed, after Ryan's phone call to Plaintiff in New Jersey notifying him of his termination, Defendants continued to communicate with Plaintiff in New Jersey for three more months regarding that termination. *See* Compl. ¶ 17, 19–23; Pl.'s Certification ¶ 4–7. In fact, the day Plaintiff realized his computer and emails were accessed and deleted, Defendants had sent the proposed settlement agreement to Plaintiff in New Jersey via Federal Express. Pl.'s Certification ¶ 6. Defendants' other communications to New Jersey consisted of at least four emails and at least one phone call. *See id.*

While not the same as the "hacking" case before this Court, in tort cases that involve "harmful communications, courts have held that the 'express aiming' requirement of the 'effects test' remains satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Cisco Sys. Inc v. STMicroelectronics Inc,* No. 14-3236, 2015 WL 5138556, at *3

(N.D. Cal. Sept. 1, 2015) (internal quotations omitted) (citing *Leibman v. Prupes,* No. 14-9003, 2015 WL 898454, at \*9 (C.D. Cal. Mar. 2, 2015) (finding personal jurisdiction based on emails sent to a California resident threatening blackmail) and quoting *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)); *see Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No.13–1347, 2014 WL 5880170, at \*2–3 (W.D. Wash. Sept. 30, 2014) (finding jurisdiction over California company that placed pre-recorded phone calls to Washington businesses without consent); *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2015 WL 5164791, at \*5 (D.N.J. Sept. 2, 2015) ("[W]here an asserted basis for personal jurisdiction is email communications, a threshold question that should be asked with respect to the issue of 'purposeful availment' is whether there is any indication in the substance of the emails, the email address itself, or other facts incident to the communications that the sender of the emails was aware that the recipient was located in or would be accessing the emails from the forum state." (quoting *Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932, at \*11 (D.N.J. May 30, 2008))); *see Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir. 1998) (finding defendant directed his activity toward the forum because "[h]is conduct, as he knew it likely would, had the effect of injuring [the plaintiff] in [the forum]").

In this case, based on the alleged facts, Defendants actively communicated with Plaintiff in New Jersey, and affirmatively directed tortious conduct via the Internet at Plaintiff who they knew was located in New Jersey at that time. Thus, I find that Defendants expressly aimed tortious conduct at Plaintiff in New Jersey and knew that Plaintiff would feel the brunt of the harm in New Jersey.

Nonetheless, Defendants argue that because Plaintiff's data was accessed using mobile technology and stored on Yahoo!'s email servers, an assertion of personal jurisdiction over them in New Jersey is improper. Defendants' position is contrary to law.

As Defendants point out, moveable technology can follow its owner wherever he chooses to go. In that regard, Defendants submit that it is not jurisdictionally relevant that Plaintiff and his computer were located in New Jersey when they allegedly hacked Plaintiff's emails and files. Implicit in their argument, due to Plaintiff's mobility, Defendants argue they had no knowledge of where Plaintiff and his computer would be. Certainly, an act performed over the Internet — without specifically targeting a forum — cannot confer nationwide jurisdiction. *See Remick*, 238 F.3d at 259 n.3. But, Defendants are not thereby subjected to being sued wherever Plaintiff takes his property. Rather, where a tortious act is expressly aimed, or affirmatively calculated to be felt, and where the brunt of the harm occurs, make up the appropriate measure. *See Ralsky*, 203 F. Supp. 2d at 612–17.

Indeed, courts dealing with allegations of Internet torts under the CFAA, 18 U.S.C. §1030, *et seq*., have reasoned that if an Internet tortfeasor claims ignorance of where his tortious conduct will be felt, but knows his conduct will result in an injury, his claim of ignorance cannot defeat personal jurisdiction. *Ralsky*, 203 F. Supp. 2d at 620 (stating that out-of-state tortfeasors cannot commit tortious acts "with impunity, avoiding personal jurisdiction simply by alleging that they did not know the exact location of [where harm would be felt], yet knowing full well that their conduct [would cause] harm[ ]"); *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 826 (N.D. Cal. 2014) (providing that a defendant's unauthorized access, even if he never knew where the information was

located, does not defeat personal jurisdiction because, at a minimum, he had "reason to know that he was accessing [Plaintiff's] computer systems in [the forum]"); *Facebook, Inc. v. ConnectU LLC,* No. 07–1389, 2007 WL 2326090, at *6 (N.D. Cal. Aug. 13, 2007) ("[T]here is no dispute that [defendants] were fully aware that [plaintiff] existed, and that they specifically targeted their conduct against [plaintiff]. That they were able to do so while remaining ignorant of [plaintiff's] precise location may render this case factually distinct from prior precedents finding jurisdiction for acts of express aiming, but not in a manner that warrants a different result."). Importantly, to claim ignorance and avoid personal jurisdiction "would constitute a manifest injustice to [Plaintiff] and [the forum]." *Ralsky*, 203 F. Supp. 2d at 620. Critically, "[i]t would be 'unfair to allow individuals who purposefully engage in interstate activities . . . to escape having to account in other states for the proximate consequences of their actions.'" *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (internal citations omitted)). Accordingly, I do not find convincing Defendants' argument that the mere fact that Plaintiff and his computer are mobile, they cannot be subject to jurisdiction in New Jersey, particularly since Defendants knew Plaintiff was located in New Jersey.

Moreover, Defendants argue that Plaintiff's email was stored on Yahoo!'s servers in California, not New Jersey, and as such, Defendants' alleged unauthorized access was targeting California. Since there is a dearth of case law in this Circuit involving tortious "virtual contacts," this Court's inquiry must look beyond the Third Circuit for guidance on how the location of servers has been considered in jurisdictional questions by other courts involving similar Internet activities.

Indeed, it would be fortuitous for the location of Yahoo!'s servers in California to have any bearing on jurisdictional questions in this matter. The Seventh Circuit has explained:

> As a practical matter, email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the "send" button, and it winds up wherever the recipient happens to be at that instant. The connection between the place where an email is opened and a lawsuit is entirely fortuitous.

*Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803.

In circumstances, such as those here, where there is "evidence that a defendant in some way targeted residents of a specific state, . . . the focus would . . . instead [be] on the deliberate actions by the defendant to target or direct itself toward the forum state." *Id.* at 803. Indeed, the instant tortious conduct was not projected aimlessly into cyberspace (*i.e.*, posted on a blog or website). *See Remick*, 238 F.3d at 259. Defendants allegedly hacked Plaintiff's computer in New Jersey. Compl. ¶¶ 24–27, 29. As Plaintiff argues, and this Court agrees, because Defendants deliberately targeted a New Jersey resident — who Defendants knew was in New Jersey when they targeted him — with tortious conduct, Defendants should have reasonably anticipated being haled to court in New Jersey.

In *Gridiron Management Group LLC v. Wranglers*, this line of reasoning was applied to similar facts that involved the hacking of a Yahoo! email account and claims under the CFAA. *Wranglers*, No. 12-3128, 2012 WL 5187839 (D. Neb. Oct. 18, 2012). In that case, the court held that when a hacker knows or has reason to know the email account he is hacking belongs to a person in the forum State, then the hacker should "anticipate[ ] the brunt of the injury resulting from his [tortious] actions [over the Internet] would be felt in [the forum State]." *Id.* at *4. Indeed, the *Wranglers* court explained that

unauthorized access to a private Yahoo! email account by a nonresident defendant provides sufficient contacts with the forum State for the hacker to reasonably anticipate being haled there. *Id.*

In sum, the Court finds that (1) Defendants' hacking constitutes a tort, (2) Defendants knew that their alleged hacking would harm Plaintiff in New Jersey, (3) Defendants affirmatively calculated their alleged hacking activities to harm Plaintiff in New Jersey, and (4) Plaintiff was in fact harmed in New Jersey. Thus, the Court holds that Defendants tortious activities satisfy the elements set forth in the *Calder* "effects test," as Defendants' contacts with New Jersey were meaningful and meet the "minimum contacts" prescribed by Due Process. *See Walden*, 134 S. Ct. at 1121; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Calder*, 465 U.S. at 788; *Int'l Shoe Co.*, 326 U.S. at 316; *Milliken*, 311 U.S. at 463.

### C. Fundamental Fairness

After a court finds that "a defendant purposefully established minimum contacts within the forum State," consideration may be given to "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp.*, 471 U.S. at 476 (citing *Int'l Shoe Co.*, 326 U.S. at 320 (quoting *Milliken*, 311 U.S. at 463)); *Remick*, 238 F.3d at 255. Accordingly, the Court now turns to Defendants' arguments that being haled to court in New Jersey would be unfair and unjust.

Defendants argue that this Court should decline jurisdiction based on the "fairness factors" articulated in *Pennzoil Prods. Co. v. Colelli & Associates., Inc.*, 149 F.3d 197 (3d Cir. 1998).[4] First, Defendants argue that "the burden on the defendant" and "the shared

---

[4] Those "fairness factors" are:

interest of the several states in furthering fundamental social policies" weigh against exercising personal jurisdiction over them in New Jersey. Second, Defendants argue "the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies" also weigh against personal jurisdiction in New Jersey.

At the outset, the Court is mindful that the Supreme Court and the Third Circuit have cautioned "that cases are 'rare . . . in which minimum requirements in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" *Pennzoil Prod. Co.*, 149 F.3d at 207 (alterations original) (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring in part) (quoting *Burger King Corp.,* 471 U.S. at 477–78 (internal quotation marks omitted))); *see Green v. William Mason & Co.,* 996 F. Supp. 394, 396 (D.N.J. 1998) ("Geography is not the touchstone of fairness. In an age when business is routinely conducted by electronic technology, and air travel brings the two national coasts within hours of each other, state boundaries are less relevant to the determination of fairness.").

---

the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies.

*Pennzoil Prod. Co.*, 149 F.3d at 205–06 (citing *Burger King Corp.*, 471 U.S. at 477 (internal quotations omitted)).

With that said, the Court addresses Defendants' initial fairness argument that "New Jersey and Pennsylvania have a shared interest in the fundamental social policy of protecting nonprofit corporations from the burden of any unnecessary costs, such as this remote litigation." Def.'s Mem. Supp. Mot. to Dismiss, at 15. While novel, I find this argument unconvincing, and the cases Defendants cite do not support their proposition.

There is no general policy or special consideration providing any type of deference for nonprofits that commit tortious behavior from avoiding being haled to court. *See, e.g.*, *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Robinson*, 123 F. Supp. 2d 965, 975–76 (W.D.N.C. 2000), *aff'd sub nom. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) (showing that an exercise of personal jurisdiction over a nonprofit may be reasonable); *Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tenn., Inc.*, 102 F. Supp. 3d 1264, 1272 (M.D. Fla. 2015) (same); *Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1042–43 (N.D. Ill. 2007) (same); *Steir v. Girl Scouts of USA*, 218 F. Supp. 2d 58, 65–66 (D.N.H. 2002) (same); *Obermaier v. Kenneth Copeland Evangelistic Ass'n, Inc.*, 208 F. Supp. 2d 1288, 1292 (M.D. Fla. 2002) (same).

Defendants' reliance on *Severinsen v. Widener University* is misplaced. In that case, the plaintiff sued Widener University, a Delaware entity, in New Jersey, arguing that although he was injured in a university dormitory in Delaware, the university's advertising provided New Jersey with general personal jurisdiction. The *Severinsen* court reasoned "educational institutions typically draw their student body from numerous states, and [the plaintiffs'] theory would subject them to suit on non-forum related claims in every state where a member of the student body resides." *Severinsen v. Widener Univ.*, 338 N.J. Super.

42, 51–52 (App. Div. 2001) (alterations original) (quoting *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985)).  The court explained that although college recruitment activities involve some advertising and random contacts with New Jersey, that activity "is too remote to justify the exercise of general jurisdiction," *id.* at 54, and those "recruitment efforts are not such that they 'should be reasonably able to anticipate being haled into court.'" *Id.* (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n.*, 819 F.2d 434, 437 (3d Cir. 1987)).  Accordingly, the court held that "traditional notions of fair play and substantial justice strongly militate against holding that 'a non-profit educational institution renders itself subject to service of process in every state of the union from which it may seek or attract outstanding athletes or scholars.'" *Id.* (quoting *Cassell v. Loyola Univ.*, 294 F. Supp. 622, 624 (E.D. Tenn. 1968).  To render "[s]uch a decision would as well place an unreasonably onerous burden on small educational institutions throughout the nation." *Id.*

Indeed, the fact that the educational institution in *Severinsen* and NINS are both nonprofit entities is where the similarities stop.  The circumstances in *Severinsen* are substantially different from those in this case, and none of the considerations in *Severinsen* are present here.  First and foremost, the case before this Court does not invoke general jurisdiction, but rather, it involves specific jurisdiction where the non-profit Defendants allegedly engaged in tortious conduct affirmatively calculated to harm a New Jersey resident while in New Jersey.  In *Severinsen*, the plaintiff's injury occurred in Delaware.  Furthermore, the other cases Defendants cite do not place importance on the nonprofit

status of the parties in the way Defendants claim. Because those cases involved different issues and facts, this Court does not find them persuasive. [5]

In their second fairness argument, Defendants insist that Plaintiff should bring his claims in Pennsylvania, because Plaintiff is already engaged in litigation with Defendants over employment discrimination in Pennsylvania. Because of that separate litigation,

---

[5]     Defendants expansively argue that the following cases stand for the proposition that New Jersey and Pennsylvania share an interest in protecting nonprofits from the costs of litigation. That general proposition does not, however, isolate a nonprofit from being subject to jurisdiction in the appropriate case.

*Petty v. Hospital Serv. Ass'n of Ne. Pa.*, which, among other claims, dealt with a standing issue, where the plaintiff failed to "to plead a direct or immediate interest as to why or how" it was harmed in its breach of contract allegations. 967 A.2d 439, 448 (Pa. Commw. Ct. 2009), *aff'd*, 23 A.3d 1004 (Pa. 2011). The *Petty* court found the plaintiff lacked standing because "to adopt Petty's argument would mean that every person who contracts with a non-profit corporation could go beyond the confines of the underlying agreement and challenge the validity of any of that non-profit's corporate actions." *Id.*

*Seiderman by Seiderman v. Am. Inst. for Mental Studies*, which dealt with defendants' motion for summary judgment on grounds of immunity under N.J. Stat. Ann. §2A:53A-7. 667 F. Supp. 154, 158 (D.N.J. 1987), *disapproved of by Monaghan v. Holy Trinity Church*, 275 N.J. Super. 594 (App. Div. 1994). After the court applied its governmental interest choice of law test, it found that defendant was protected under New Jersey's charitable immunities statute for "ordinary negligence, [but not] gross negligence and wanton or willful conduct." *Id.* at 161.

*Rodi v. S. New Eng. Sch. of Law*, which dealt with plaintiff's claims of "fraudulent inducement, breach of fiduciary duties, breach of contract and of an implied duty of good faith and fair dealing, violation of the Consumer Fraud Act, and for a continuing tort." 255 F. Supp. 2d 346, 348 (D.N.J. 2003). Plaintiff argued he was misled to believe the defendant law school would be accredited by the American Bar Association, but plaintiff was unable to provide "evidence that it was Defendant that solicited Plaintiff[ ] . . . . Rather, the evidence suggest[ed], and it [w]as not . . . disputed by Plaintiff, that Defendant was responding to a request for information from Plaintiff." *Id.* at 350.

The facts of *Petty*, *Seiderman by Seiderman*, and *Rodi* are substantially different from those in the instant case, and they do not stand for the general proposition that nonprofits who engage in tortious behavior should be protected from litigation costs in foreign states where that tortious behavior was aimed and felt.

Defendants argue, Plaintiff's tort claims against them in this matter should also be brought in Pennsylvania. This argument, however, is unavailing because whatever convenience may exist, it does not override New Jersey's interest in protecting its residents from tortious behavior.

In cases such as the instant matter, "New Jersey maintains a significant policy interest in protecting [ ] residents of its state against [tortious conduct]." *Formula One Licensing BV v. Valentine*, No. 14-5812, 2016 WL 7175591, at *7 (D.N.J. Dec. 8, 2016); *see Gianfredi v. Hilton Int'l of Puerto Rico, Inc.*, No. 08-0769, 2008 WL 4425228, at *5 (D.N.J. Sept. 24, 2008) (reiterating "New Jersey's paramount interest in the protection of its residents"). Furthermore, "New Jersey's interest in [Defendant's] conduct . . . is no less than [Pennsylvania's] interest. As such, trying the case in New Jersey and examining the lawfulness of the challenged conduct [weighs in favor of exercising jurisdiction]." *Formula One Licensing BV*, 2016 WL 7175591, at *7 (citing *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 116).

The instant matter is not rare, but is the kind described by Justice Brennan in *Asahi*. "[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Marten*, 499 F.3d at 297 (alterations original) (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980)). Here, it is reasonable, fair, and foreseeable to hale Defendants into this jurisdiction, because, as alleged, Defendants expressly aimed their tortious conduct at Plaintiff in New Jersey. *See Marten*, 499 F.3d at 297. In addressing the "fairness factors," the Court finds, for all of the above

reasons, and because Defendants' conduct meets the *Calder* "effects test," exercising personal jurisdiction over Defendants comports with Due Process.

## III.    Individual Defendants

Defendants argue that even if NINS were subject to jurisdiction, "Plaintiff would still have to allege more to establish personal jurisdiction over the Individual Defendants." Def.'s Mem. Supp. Mot. to Dismiss, at 19. Defendants reason that "Plaintiff does not identify any such facts with respect to any of [the Individual Defendants]," or "a single concrete action that any Individual Defendant performed, much less one expressly directed towards New Jersey." Def.'s Reply Mem. Supp. Mot. to Dismiss, at 12; 14. While it is true that Plaintiff's allegations involving all of the Individual Defendants are scant, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff *need only establish a prima facie case of personal jurisdiction* and the plaintiff is *entitled to have its allegations taken as true* and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc.*, 384 F.3d at 97 (emphasis added) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (holding that when ruling on a Rule 12(b)(2) motion the court must accept all of the plaintiff's allegations as true and construct disputed facts in favor of the plaintiff); *Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1). Here, Plaintiff has alleged that he named the Individual Defendants because, "*they approved and oversaw the intrusion* of Plaintiff's personal and private email communications by NINS." Compl., ¶ 8 (emphasis added).

Indeed, this Court's determination of personal jurisdiction over the Individual Defendants cannot be based on NINS's contacts. *See Calder*, 465 U.S. at 790; *Busse v. Homebank LLC*, No. 07-3495, 2009 WL 424278, at *4 (D.N.J. Feb. 18, 2009)

("[J]urisdiction over an individual does not exist simply because he or she is an agent or employee of an organization which presumably is amenable to jurisdiction in this Court") (citing *Nicholas v. Saul Stone & Co., LLC*, 224 F.3d 179, 184 (3d Cir. 2000)). Rather, each of the Individual Defendants' contacts with the forum must "be assessed individually" and "their status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790. Accordingly, "actions taken *within the forum state* by a corporate official in his official capacity may be considered for purposes of establishing jurisdiction over him in his individual capacity." *Educ. Testing Serv. v. Katzman*, 631 F. Supp. 550, 559 (D.N.J. 1986) (emphasis original). And, here, Plaintiff has alleged that each of the Individual Defendants "approved and oversaw" the tortious conduct giving rise to Plaintiff's claims. Compl. ¶ 8. In response to those allegations, Defendants argue, on their motion, that personal jurisdiction is not proper because the Individual Defendants did not "explicitly direct[ ] any conduct towards New Jersey." Def.'s Mem. Supp. Mot. to Dismiss, at 20–21.

In the context of assessing personal jurisdiction, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med.*, 2015 WL 5164791, at *5 (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)). Indeed, while Plaintiff has only provided allegations in his complaint, Defendants have not contradicted those facts with affidavits or other evidence. Nowhere in Defendants' response to Plaintiff's allegations do they provide any evidence to contradict Plaintiff's version of events. Thus, this Court must accept as true Plaintiff's allegations asserted against the Individual Defendants — that is, they directed, participated, or cooperated in NINS's tortious cyber-

activity. *See Trustees of Structure Steel & Ornamental Iron Workers Fund v. Huber*, 136 N.J. Super. 501, 505–06 (App. Div. 1975); *accord Calder*, 465 U.S. at 790 (explaining that jurisdiction is proper over the individual defendants on the basis that they were "primary participants in an alleged wrongdoing intentionally directed at" the forum State).

Accordingly, if the Individual Defendants could be held statutorily liable under 18 U.S.C. §1030(a) or (b), or were otherwise "personally involved in committing a tort," then jurisdiction exists "over an individual defendant who is acting in a 'corporate capacity.'" *Nelligan v. Zaio Corp.*, No. 10–1408, 2011 WL 1085525, at *4 n.9 (D.N.J. Mar. 21, 2011); *see also Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Pa.1979) ("It would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability."). Thus, because, as alleged, the Individual Defendants "approved and oversaw the intrusion of Plaintiff's" computer and email, the Court is satisfied that jurisdiction over these defendants is proper.[6]

---

[6] The Court stresses that this decision does not assess the sufficiency of Plaintiff's claims against the Individual Defendants, or the merits thereof. Issues in regard to a claim's sufficiency have not been raised by Defendants in the instant matter, and therefore are not addressed. The question this Court has been called to answer is solely one of specific personal jurisdiction. As such, the Court only assesses the allegations against the Individual Defendants for the jurisdictional analysis.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.


**DATED:** June 28, 2017                                        /s/        Freda L. Wolfson
                                                                                Freda L. Wolfson
                                                                                United States District Judge