UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW JERSEY

ROBERT C. CHRISTIE,

      Plaintiff,

   vs.

NATIONAL INSTITUTE FOR NEWMAN
STUDIES, CATHARINE RYAN & DREW
MORGAN,

      Defendants.

Case No.

**3:16-CV-06572-FLW-TJB**

**MOTION RETURNABLE
NOVEMBER 5, 2018**

---

**ROBERT C. CHRISTIE'S BRIEF IN REPLY TO
NATIONAL INSTITUTE FOR NEWMAN STUDIES, CATHARINE RYAN
& FATHER DREW MORGAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

**MEYERSON, FOX,
MANCINELLI & CONTE, P.A.**
One Paragon Drive - Suite 240
Montvale, New Jersey 07645
Tel: 201-802-9202
Fax: 201-802-9201
*Attorneys for the Plaintiff,
Robert C. Christie*

**On the Brief:**

**Andrew P. Bolson, Esq.
Attorney I.D. No. 012792010
Matthew M. Nicodemo, Esq.
Attorney I.D. No. 162082016**

## PRELIMINARY STATEMENT

On September 21, 2018, Plaintiff, Robert C. Christie ("Christie") filed a Motion for Partial Summary Judgment in regards to the counts for common law invasion of privacy and for violation of the Stored Communications Act as they pertain to the desktop computer in Pittsburgh, PA.  On the same day, the National Institute for Newman Studies ("NINS"), Catharine Ryan ("Ryan") and Father Drew Morgan ("Father Morgan") (collectively the "Defendants") filed a Motion for Summary Judgment on all of Plaintiff's counts as they relate to the desktop computer in Pittsburgh, PA, the laptop computer in New Jersey and the Yahoo! server which hosted Christie's personal, att.net email account. Plaintiff filed Opposition to the Defendants' Motion for Summary Judgment on October 22, 2018 and cross-moved for Partial Summary Judgment on counts for the Computer Fraud and Abuse Act and the New Jersey Computer-Related Offenses Act pertaining to the desktop and the Yahoo! server.

Plaintiff maintains that the counts related to the laptop in New Jersey are not ripe for summary judgment as NINS' access to said laptop is a question of fact requiring jury determination. While the Defendants raise the issue of the laptop in their motion, Plaintiff relies upon the Opposition previously submitted to address this point.  That being said, it is important to note that a reasonable jury can determine NINS was the perpetrator of the

2

invasion into the laptop based upon the evidence known and to be presented at trial.  See Reese Cadillac Corp. v. Glens Falls Ins. Co., 59 N.J. Super. 118, 130 (App. Div. 1960)("Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil issues, is defined as mere preponderance of probabilities, and therefore a sufficient basis for decision.").

As to the desktop in Pittsburgh, PA and the Yahoo! email account, on June 16, 2016, NINS accessed the desktop computer Christie used while at NINS to search for information about Father Ian Ker that had been provided the day prior to NINS by Christie. Moreover, at the time the search for said information was conducted by Mia McIntyre ("McIntyre"), Christie had been terminated by NINS.[1]  Furthermore, McIntyre, as agent for NINS, accessed the desktop computer using a password that Christie had provided to Father Morgan for a purpose unrelated to accessing the desktop. Thereafter, McIntyre obtained an email sent from New Jersey on a private device and from a private email account to a friend in

---

[1] NINS disputes that Christie was an employee of NINS. Instead, NINS maintains that Christie served as an independent contractor. See Defendants' Response to Plaintiff's Undisputed Facts, ¶1.  That being said, elsewhere NINS claims Christie was "responsible for the 'overall management of the operation,'" and admits that NINS issued an announcement in May 2015 that Christie was the Executive Director of NINS. See id. at ¶1 & Defendants' Opposition Brief, P. 12.  Plaintiff's status as an independent contractor versus employee is not material for this Motion.  For the purposes of this Motion and for consistency, Christie will continue to be referenced as an employee and that his employment was terminated by NINS.

England.   The personal email at issue was on the desktop unbeknownst to Christie as a result of an email "synchronization" that he neither approved nor authorized.

Moreover, the email contained several references that would make immediately known that the email was from Christie's personal email account.   NINS then used this information as a basis to revoke the Confidential Agreement and General Release ("the Agreement") that was agreed upon and ready to be signed by the Parties.   Defendants took multiple intentional actions that ultimately resulted in Plaintiff being damaged.   Plaintiff maintains that the facts, in regards to NINS' actions, as a matter of law, violate Christie's common law and statutory privacy rights.

**I.    PLAINTIFF'S ONGOING EMPLOYMENT MATTER IS UNRELATED TO THE PRESENT LITIGATION.**

Defendants mistakenly conflate the issues of this case with the ongoing Pennsylvania wrongful termination case that has been filed by the Plaintiff.   The wrongful termination case involves an employment dispute and focuses on whether Christie's termination from NINS was lawful.   On the other hand, this matter is centered on Plaintiff's privacy and whether Plaintiff's statutory and common law privacy rights were breached after his employment was terminated.

## II.  PLAINTIFF HAS ASSERTED A CLAIM FOR THE LOSS OF VALUE ASSOCIATED WITH THE CONFIDENTIAL AGREEMENT AND GENERAL RELEASE.

Throughout Defendants' Opposition, Defendants suggest that Plaintiff's damages are limited to "the loss of a manuscript and the loss of other documents for publication."  See Defendants' Response to Plaintiff's Statement of Undisputed Facts, ¶5.  This position is disingenuous at best.  Reference to the loss of the Agreement as a result of the invasion of privacy is found throughout the First Amended Complaint and was one of the central issues during discovery. See Cert. of Andrew P. Bolson, Esq. in Opposition to the Defendants' Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for Partial Summary Judgment, **Exhibit F**, Plaintiff's First Amended Complaint.

In his deposition testimony, Christie specifically referenced losses sustained on the laptop computer pertaining to his deleted documents.  See Cert. of Robert C. Christie in opposition to the Defendants' Motion for Summary Judgment and in support of Plaintiff's cross-motion for Partial Summary Judgment, ¶8.  It is also ironic that Defendants claim that Plaintiff's loss must be limited to the loss of the "manuscript and the loss of other documents for publication" when Defendants themselves assert that the Agreement could not serve as a basis for damages under the Computer Fraud and Abuse Act, the count Defendant's counsel referred to during Christie's deposition.  See Defendants' Brief

in Support of Summary Judgment, P. 16. Defendants argument with respect to damages is a red herring that should not be entertained by the Court.

### III. PLAINTIFF'S COUNT FOR INVASION OF PRIVACY REMAINS VIABLE.

In their Opposition, Defendants correctly note that Stengart v. Loving Care Agency, Inc., 201 N.J. 300 (2010), did not involve a claim for invasion of privacy. Nonetheless, Stengart is important because it established that an employee may have a privacy right to personal email correspondence even though the correspondence is found on a workplace device. See id. at 321. As Stengart noted, "whether an employee has a reasonable expectation of privacy in her [or his] particular work setting 'must be addressed on a case-by-case basis.'" See id. at 317.

The invasion of privacy alleged here is truly three-fold. First, Plaintiff believed that he had an expectation of privacy that the desktop computer at NINS would not be intentionally accessed as a matter of law. Support for this expectation is premised on undisputed facts, including Plaintiff had not provided NINS the password to the desktop, McIntyre did not have the passwords to other employee computers, NINS lacked a policy with respect to passwords and most importantly, Christie had provided the information requested to NINS prior to the search of the desktop being performed. Plaintiff respectfully submits that

6

NINS' access of the desktop and whether that constituted an invasion of privacy can thus be decided as a matter of law in his favor. NINS' dubious dispute as to whether Plaintiff provided the password to Father Morgan to access the ADP account and not the desktop fails to present a genuine issue of material fact sufficient to withstand summary judgment.

That being said, if the Court or a jury were to determine that NINS' initial access to the desktop was appropriate, the inquiry into whether an invasion of privacy incurred does not end. A secondary invasion of privacy occurred when McIntyre intentionally reviewed an email to which Plaintiff maintained an expectation of privacy. McIntyre claims she was unaware that she was reviewing personal email correspondence from Christie. See Cert. of Andrew P. Bolson, Esq., Exhibit K, Dep. of Mia McIntyre, P. 53:6 – 10. Plaintiff challenges the credibility of this assertion.

Again, the email in question between Christie and Father Ian Ker indicated that it was sent on June 15, 2016. See Cert. of Andrew P. Bolson, Esq., **Exhibit E**, Email attached to email from McIntyre to Father Morgan (copy to Kenneth Parker) dated June 16, 2016. McIntyre knew that Christie was not with NINS on June 15, 2016 and could not have sent the email from his NINS account since his NINS account had been previously disabled. See Defendants' Statement of Undisputed Facts, ¶¶35 & 48. Moreover, the first

paragraph references "Mr. Parker."  See Cert. of Andrew P. Bolson, Esq., **Exhibit E**, Email attached to email from McIntyre to Father Morgan (copy to Kenneth Parker) dated June 16, 2016.  Kenneth Parker did not start with NINS until after Christie had been terminated.  See Cert. of Andrew P. Bolson, Esq., **Exhibit K**, Dep. of Mia McIntyre, P. 52:22 – 24.  In addition, the email contains no mention of Christie's NINS email account and only references r.christie@att.net.  See Cert. of Andrew P. Bolson, Esq., **Exhibit E**, Email attached to email from McIntyre to Father Morgan (copy to Kenneth Parker) dated June 16, 2016.

In examining these facts, it is reasonable for a jury to determine that McIntyre intentionally read a personal email to which she knew she should not have had access.  At the very least, the determination of whether McIntyre's actions with respect to examining the email between Christie and Father Ker was a breach of privacy would require the trier of fact to make credibility determinations, thereby defeating Defendants' Summary Judgment Motion.

Finally, and most importantly to whether Christie's privacy was breached as a matter of law, Plaintiff maintains that the email between Christie and Father Ian Ker should not have been accessed by NINS and downloaded to the desktop to begin with.  On its own, the retrieval of Plaintiff's email by NINS, which is undisputed, constituted a common law privacy invasion.  Christie had an

expectation of privacy in his email account and expected that such account would not be accessed for all the reasons discussed at length previously.  By accessing the email account, automatically or not, after Christie's termination, NINS violated Christie's privacy right in his email correspondence.

Defendants maintain that Plaintiff, as a matter of law, cannot sustain a claim for common law invasion of privacy largely based upon Ehling v. Monmouth-Ocean Hosp. Serv. Corp., 961 F. Supp. 2d 659 (D.N.J. 2013) and Torsiello v. Strobeck, 955 F. Supp. 2d 300 (D.N.J. 2013).  In Ehling, the plaintiff maintained a Facebook account and was Facebook friends with a co-worker.  961 F. Supp. 2d at 662-663.  The co-worker obtained a post made to plaintiff's Facebook wall and provided the post to their superiors who then suspended the plaintiff "*with* pay."  Id. at 663.  After the employee was later terminated for other reasons, the plaintiff filed a nine-count complaint against her former employer for, among other counts, common law invasion of privacy.  Id. at 664.  The court granted summary judgment on the invasion of privacy claim because the evidence did "not show that Defendants obtained access to Plaintiff's Facebook page by, say, logging into her account, or asking another employee to log into Facebook.  Instead, the evidence shows that Defendants were the passive recipients of information that they did not seek out or ask for."  Id. at 674.

As a preliminary matter, _Ehling_ is distinguishable from this case because the co-worker, in _Ehling_, was authorized to access the plaintiff's Facebook account. See _id._ at 669. Here, the email at issue was obtained without authorization for several reasons discussed at length during the course of these motions. By intentionally accessing the desktop computer and reviewing Christie's email correspondence with Father Ker, at the least, NINS must be held responsible for the invasion of Christie's privacy.

As to Father Morgan and Ryan, the facts in this case warrant the imposition of individual liability based upon facts unique to this case and not found in _Ehling_. Specifically, here, it is Plaintiff's position that the access to Christie's email account was not authorized. In _Ehling_, the Court found that the initial access to the Facebook post had been authorized by the user exemption. See _id._ Moreover, in this case, Father Morgan used the email received and expounded upon its contents to Ryan, adding "Ken was told by Daniel Joyce that Ed Short referred to Bob's description of our transition as 'the goings on in Pittsburgh as hi jinx'???". See Cert. of Andrew P. Bolson, Esq., **Exhibit H**, Email from Father Morgan to Catharine Ryan dated June 16, 2016. Ryan proceeded to ask Father Morgan to contact her to discuss. See Cert. of Andrew P. Bolson, Esq., **Exhibit I**, Email from Catharine Ryan to Father Morgan dated June 16, 2016.

10

Upon their discussion, Father Morgan and Ryan knew Christie's email was from a personal account and was intended to be private. See Cert. of Andrew P. Bolson, Esq., **Exhibit L**, Deposition of Catharine Ryan, P. 59:10 – 60:21.  Yet, both Father Morgan and Ryan ignored Christie's privacy and intentionally read the email and chose to use the email as a basis to revoke the Agreement that had been negotiated.  Again, but for seeing this email, Christie would have received the benefits afforded under the Agreement. Plaintiff maintains that Father Morgan and Ryan may have been recipients of the email but were not passive in their actions with respect to causing Plaintiff's damages.  Instead, Plaintiff maintains that Father Morgan and Ryan intentionally breached Christie's privacy and intruded upon Christie's seclusion as a matter of law.

NINS also cites Torsiello v. Strobeck, in support of its contention that an employer cannot be liable for a privacy invasion.  955 F. Supp. 2d 300 (D.N.J. 2013).  In Torsiello, the locker that was opened contained information obtained during the course of employment.  Id. at 305.  Critically, here, the email at the center of this privacy invasion claim was sent and obtained by NINS after Christie was terminated.  The email was not a byproduct of employment and was neither written nor sent from an employer device.  Provided these facts and noting that invasion of privacy

claims must be examined on a case by case basis, <u>Torsiello</u> is inapplicable to this matter.

From a public policy standpoint, an employer should not be able to access and review the personal email correspondence of a former employee when said email correspondence was written and sent from a private device and after the employee had been terminated. In this case, the Defendants discovered (we assert intentionally) email correspondence that was used as a basis to revoke the Agreement that had been negotiated and agreed to between the parties. But for NINS and the individual Defendants deliberate actions breaching Christie's privacy to find and use the email in question which was known to have been obtained from a NINS device after Christie had been terminated, Christie would not have been damaged. Plaintiff maintains that the Defendants' actions, under the unique facts of this case, would be highly offensive to a reasonable person. If the Court is not prepared to grant summary judgment as to invasion of privacy to the Plaintiff for the existence of genuine issues of material facts, at the least, the count must survive Defendants' Motion for Summary Judgment.

## IV. PLAINTIFF REMAINS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON THE STORED COMMUNICATIONS ACT CLAIM.

It is important to reiterate the pertinent language of the Stored Communications Act. Under 18 <u>U.S.C.</u> 2701(a), whoever:

> (1) intentionally accesses without authorization a facility through which an

12

electronic communication service is provided;
or

(2) ***intentionally exceeds an authorization to access that facility;*** and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

(emphasis added).

For the purposes of the pending motions, Plaintiff will concede that McIntyre did not access the Yahoo! server to obtain the email correspondence between Christie and Father Ian Ker. Nevertheless, NINS violated the SCA as matter of law.  On June 16, 2016, it is undisputed that NINS synchronized with the Yahoo! server servicing Christie's att.net account and obtained sixty-two (62) emails from Christie's personal email account and downloaded them onto NINS' desktop.  See Defendants' Response to Plaintiff's Statement of Undisputed Facts, ¶24 ("the Mail application would automatically fetch e-mails from the remote server hosting the r.christie@att.net account, and store copies of the r.christie@att.net emails on the hard drive of the desktop. No human intervention was required.")  Among the sixty-two (62) emails that were downloaded was the email between Christie and Father Ian Ker that was subsequently accessed by McIntyre and later reviewed and used by NINS/Father Morgan/Ryan to justify the revocation of the Agreement.  See Cert. of Andrew P. Bolson, Esq.,

**Exhibit T**, non-privileged emails accessed on the NINS' desktop on June 16, 2016.

NINS cannot ignore that its process initiated by a NINS employee was intentionally retrieving Christie's personal email correspondence after he was terminated.  The act of synchronization is akin to a NINS employee continually reaching into Christie's physical mail box and bringing the mail to NINS to be opened and reviewed.  If a NINS' employee sent off a robot to physically go to Christie's home, obtain his mail from his mailbox, make a copy of the mail and bring the copy back to NINS, NINS would be held liable for the robot's actions under respondent superior. See Black's Law Dictionary 619 (3rd Pocket ed. 2006)("The doctrine holding an employer or principal liable for the employee or agent's wrongful acts committed within the scope of the employment or agency.").

The act of synchronization is the modern version of the factual scenario outlined above.  NINS cannot escape liability simply because the intentional retrieval was done automatically by NINS after an employee of NINS set in motion the synchronization process during the course of her employment.

Christie maintains that he did not authorize Dorsey to synchronize his email account.  See Cert. of Robert C. Christie in opposition to the Defendants' Motion for Summary Judgment and in support of Plaintiff's cross-motion for Partial Summary Judgment,

14

¶1.  However, if Christie had or unknowingly authorized said access, certainly as a matter of law the authorization that was granted would be limited to the time Christie worked at NINS.  Upon his termination, NINS' continual retrieval of his personal email correspondence would exceed any authorization that was provided.  See 18 U.S.C. 2701(2).

Furthermore, any argument that NINS was unaware of the synchronization is unpersuasive.  NINS is responsible for the action of its employees and the operation of its equipment.  Dorsey disabled the NINS email account upon Christie's termination.  See Defendants' Statement of Undisputed Facts, ¶35.  Accordingly, she could have also disabled all accounts associated with Christie, including the synchronization.

Plaintiff argues that his damages are in excess of $200,000 as he lost the value of the Agreement as a result of NINS accessing his personal email account.  The SCA permits a plaintiff to recover the actual damages as a result of the SCA violation.  See 18 U.S.C. 2707(c).  Simply, if NINS had not synchronized his email account, or continued to do so after his termination, Christie would not have been damaged.

That being said, if the Court is not inclined to consider the Defendants' argument with respect to damages, Christie would still be entitled to his statutory damages for all the emails accessed without authorization or in excess of his authorization.  The

15

undisputed facts show NINS accessed sixty-two emails on June 16, 2016.  Accordingly, at a minimum, Christie would be entitled to $62,000 ($1,000 per violation) in addition to the costs of the action and his reasonable attorney fees.  See id.

As to the SCA claim, there is no dispute with respect to the material facts.  NINS accessed Christie's email account intentionally without (or in excess of) his authorization.  Therefore, as a matter of law, NINS violated the SCA.

**CONCLUSION**

In sum, NINS gained access to Plaintiff's personal email correspondence without authorization and used said access to revoke the Agreement that caused damage to Plaintiff.  The initial access to Christie's email correspondence by NINS is undisputed.  It is immaterial whether McIntyre herself committed the access or an automated process by NINS that was deliberately retrieving emails to the desktop.  While NINS maintains that the access of said account was authorized, as a matter of law, Plaintiff reaffirms that such access was not authorized, or was committed in excess of any authorization previously provided upon Plaintiff's termination.  It is for this reason, that Plaintiff cross-moved for summary judgment on the counts for violation of the Computer Fraud and Abuse Act and the New Jersey Computer-Related Offenses Act.

Plaintiff concedes, however, that if Plaintiff's invasion of privacy count hinges on McIntyre's access to the desktop or her review of the email between Christie and Father Ian Ker, the facts disputed by NINS would require determination by the trier of fact. However, as a result of the disputed facts, summary judgment in favor of the Defendants would remain inappropriate.

                          Respectfully submitted,
                          Meyerson, Fox, Mancinelli & Conte, P.A.


                          /s/Andrew P. Bolson
                          Andrew P. Bolson, Esq.


Dated: October 29, 2018