# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT C. CHRISTIE,<br><br>        Plaintiff,<br><br>   vs.<br><br>NATIONAL INSTITUTE FOR NEWMAN STUDIES, CATHARINE RYAN, and DREW MORGAN,<br><br>        Defendants. | Case No. 3:16-cv-06572 (FLW)(TJB)<br><br>*Motion Returnable: November 5, 2018* |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| **REED SMITH LLP** | **HOLLAND & KNIGHT LLP** |
|---|---|
| Siobhan A. Nolan, Esq.<br>Reed Smith LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, NJ 08543<br>(609) 524-2058<br>SNolan@reedsmith.com | Mark S. Melodia, Esq.<br>Paul J. Bond, Esq.<br>Holland & Knight LLP<br>Cira Center<br>2929 Arch Street,  Suite #800<br>Philadelphia, PA 19104<br>(215) 252-9535<br>Mark.Melodia@hklaw.com<br>Paul.Bond@hklaw.com |

*Co-Counsel for Defendants*
*The National Institute for Newman Studies,*
*Catharine Ryan and Drew Morgan*

**Table of Contents**

                                                                                                                                **Page**

I.     PRELIMINARY STATEMENT .................................................................................1

II.    THE UNCONTESTED FACTS AND THE LAW AS TO EACH COMPUTER SYSTEM AT ISSUE COMPEL SUMMARY JUDGMENT ..........................................................................................................2

    A.  THE UNCONTESTED FACTS AND THE LAW AS TO THE NINS LAPTOP SUPPORT SUMMARY JUDGMENT ................................................................2

    B.  THE UNCONTESTED FACTS AND THE LAW AS TO THE NINS DESKTOP SUPPORT SUMMARY JUDGMENT .................................................................6

    C.  THE UNCONTESTED FACTS AND THE LAW AS TO THE YAHOO! SERVER SUPPORT SUMMARY JUDGMENT ...............................................................10

    D.    PLAINTIFF'S INVASION OF PRIVACY CLAIM FALLS ON THE SAME BASIS AS ALL OTHER COUNTS ..............................................13

IV.   CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................................................6, 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................................................3

*Coleman v. City of Long Branch*,
   No. 15-7314, 2018 U.S. Dist. LEXIS 143190 (D.N.J. August 22, 2018)........................1, 2, 12

*Hennessey v. Coastal Eagle Point Oil Co.*,
   129 N.J. 81 (1992) ........................................................................................................14

*Lidell v. Mimosa Lakes Ass'n*,
   6 N.J. Tax 417 (1984) ....................................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)......................................................................................................4, 5

*Mu Sigma, Inc. v. Affine, Inc.*,
   No. Civil Action No.: 12-1323 (FLW), 2013 US Dist Lexis 99538 (D.N.J. 2013) ..........................................................................................................................9

*Poltrock v. NJ Auto. Accounts Mgmt. Co.*,
   2008 U.S. Dist. LEXIS 103351 (D.N.J.) .........................................................................10

*White v. White* ........................................................................................................................7

**Statutes**

344 N.J. Super. 211, 221 (Ch. Div. 2001) .................................................................................7

I.  **PRELIMINARY STATEMENT**

Defendants The National Institute for Newman Studies ("NINS"), Mrs. Catharine Ryan, and Father Drew Morgan (collectively, the "Individual Defendants") write in further support of their Motion for Summary Judgment **[DE # 47]** ("Defendants' Motion").  Following more than a year of litigation, the exchange of written discovery, multiple depositions in Pennsylvania and New Jersey, and the completion of expert reports and testimony, Plaintiff Robert Christie ("Christie") has been given every possible opportunity to find evidence in support of his case.  On the current (completed) record, no reasonable jury could find in Christie's favor on any of the counts against Defendants.  *See, e.g., Coleman v. City of Long Branch*, No. 15-7314, 2018 U.S. Dist. LEXIS 143190 (D.N.J. August 22, 2018) at *9-10 (noting that a factual dispute is only genuine for purposes of summary judgment if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party").

Despite Christie's numerous extraneous references to employment matters, the action Christie brought before this federal Court is first, last, and only a baseless accusation of hacking.  Christie has sued NINS and the Individual Defendants under powerful federal and state statutes designed to strictly punish those who intentionally engage in hacking, *i.e.*, *intentional* unauthorized access to information systems. Christie's invasion of privacy claim turns on *intentional* unauthorized access into his

1

seclusion.  **Even in Opposition, Christie presents this Court with no credible evidence that NINS or the Individual Defendants hacked anything or intruded anywhere.**  All the evidence points the other way, and compels the end of this meritless suit.  *Cf., Coleman, supra*, 2018 U.S. Dist. LEXIS 143190 at *25 ("Defendants have met their summary judgment burden by showing that, despite the close of the discovery period, and despite the opportunity to submit evidence to the Court in opposition to this motion, [Plaintiff] has not produced or submitted any evidence supporting his claim").

**II.   THE UNCONTESTED FACTS AND THE LAW AS TO EACH COMPUTER SYSTEM AT ISSUE COMPEL SUMMARY JUDGMENT**

In Opposition, Christie agrees that the three computer systems at issue are: (a) the NINS Laptop; (b) the NINS Desktop; and (c) the Yahoo! server storing r.christie@att.net e-mails.  We examine each in turn to show how NINS and the Individual Defendants are entitled to summary judgment against Christie's claims.

**A.   The Uncontested Facts and The Law As To The NINS Laptop Support Summary Judgment**

Christie does not dispute that NINS provided him with use of a Laptop.  Christie contends that on June 18, 2016, "hundreds of emails and files were deleted from the laptop *in Christie's possession*."  *Opposition*, p. 4 (emphasis added).  Note

2

the phrase "in his possession" as, at that time, Christie had sole, exclusive physical access to the Laptop in New Jersey. *DSUMF* ¶ 10, 13.  NINS and the Individual Defendants, in Pennsylvania, had no physical access to the Laptop.  Yet, Christie still blames NINS and the Individual Defendants.

Christie hired an expert, Tino Kyprianou, to look for signs of remote compromise.  As Christie admits in his response to Defendants' Statement of Undisputed Material Facts, Christie's expert "was **unable to determine if the laptop was remotely compromised**". *DSUMF* ¶ 65 (quote admitted by Christie in denying ¶ 65 as stated **[DE #50-4]**, p. 13)(emphasis added).  Christie's expert testified "**I didn't find any evidence that NINS hacked into this computer**," meaning the Laptop.  *DSUMF* ¶ 66 (admitted by Christie **[DE #50-4]**, p. 13)(emphasis added).  No reasonable jury could hear the sworn testimony of Christie's paid expert that he "didn't find any evidence that NINS hacked into this computer" and still rule against NINS or the Individual Defendants.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Christie, in his response to this undisputed material fact, weakly rejoins that perhaps the Laptop was accessed by "untraceable" means. **[DE #50-4]**, p. 14.   That

3

is pure conjecture unsupported by any evidence, and not sufficient to survive summary judgment. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)("The opposing party must do more than simply show that there is some metaphysical doubt as to the material facts"). Christie then states that "other evidence must be considered which supports a finding that NINS accessed the laptop in question" and cites to para. 22 of his own Certification. **[DE #50-4]**, p. 14. To complete the inanity, in para. 22 of his own self-serving Certification, Christie states that he does not find NINS's denial credible for three reasons. For completeness, we examine and dispose of each in turn. **[DE #46-3]**, p. 8-9.

First, Christie says, "after June 18, 2016, NINS never requested the return of *my* computer again and what was once an 'urgent' matter for NINS suddenly became not important." *Id*. at p. 8 (emphasis added). This is both false and completely irrelevant. The uncontested evidence is that NINS owned the Laptop, Christie did not. *DSUMF* ¶ 11 (admitted by Christie **[DE #50-4]**, p. 3). NINS had a standing demand for the return of the Laptop. NINS eventually had to sue Christie to get it back. However, more importantly, the schedule on which NINS reiterated its standing demand for the Laptop is not evidence of anything. It certainly does not prove or tend to prove that NINS used untraceable technology to remotely hack into its own Laptop and delete files on June 18, 2016. NINS would have no motivation to remotely hack into and damage the contents of its own Laptop. The allegation is

4

bizarre. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595-97 (1986)("petitioners had every incentive not to engage in the conduct with which they are charged, for its likely effect would be to generate losses for petitioners with no corresponding gains"; "the absence of any motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists").

The proffer of this non-evidence by Christie goes beyond unconvincing to literally incoherent. Christie goes on: "Second, NINS was unconcerned by the loss of my files and emails when informed." **[DE #46-3]**, p. 8. Christie's abstract characterization of NINS is devoid of any citation to the factual record or concrete events. It is not evidence of anything, much less that NINS committed cross-country computer crimes using unspecified "untraceable" technology and leaving no trail.

Christie notes that the alleged June 18 deletion came soon after the revocation of the alleged Severance Agreement. **[DE #46-3]**, p. 9. Christie, the supposed academic, makes a well-known logical blunder: The rooster crowed, then the sun rose, therefore the rooster *must* have caused the sun to rise. It does not follow. Christie's own expert said he "could not rule out anybody" as the cause of the deletion, including Christie. **[DE #50-4]**, p. 14-15. Mere proximity of time, in the glaring absence of any supporting documents, testimony, or forensic evidence establishing any wrongful action by NINS, would not allow a reasonable jury to find

5

NINS or the Individual Defendants responsible. Even if happenstance were evidence in the loosest possible sense of the term (it is not), this "evidence" is woefully insufficient. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient").

Lastly, Plaintiff cites to the report of his own expert finding "suspicious activity" on the Laptop. However, as detailed above, Christie's expert found no evidence of remote compromise and no evidence that NINS hacked the computer. There is no contest to be decided by any jury. Christie loses as to the NINS Laptop.

**B. The Uncontested Facts and The Law As To The NINS Desktop Support Summary Judgment**

There is no dispute that, at all times, NINS alone owned the Desktop it allowed Christie to use temporarily in connection with his services for NINS. *DSUMF* ¶ 10 (admitted). There is no dispute that at all times the Desktop was located at NINS headquarters in Pittsburgh, PA. *DSUMF* ¶ 18 (admitted). There is no material dispute that Christie had ceased to provide services to NINS by April 26, 2016. *DSUMF* ¶ 34 (denied but Christie admits he "provided services up to his termination on April 26, 2016"). On June 16, 2016, NINS held all of the bundle of rights associated with the concept of ownership. *Cf.*, *Lidell v. Mimosa Lakes Ass'n*, 6 N.J.

6

Tax 417, 423 (1984)(noting that ownership of property includes the rights to use, sell, lease, enter, give away, or do all or none of these things).[1]

Yet Christie insists that on June 16, 2016, NINS needed *Christie's* authorization to search its own Desktop. In its Motion, NINS presented evidence that Christie provided the password to the Desktop. In Opposition, Christie contests that evidence. For purposes of this Motion, the contest is wholly immaterial. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(articulating the standard for summary judgment, noting that "factual disputes that are irrelevant or unnecessary will not be counted").

Suppose, **counterfactually**, and solely for purposes of this Motion, that Christie, when he ceased to provide services, had churlishly, vindictively, point-blank refused to provide NINS the password for its own Desktop. By Christie's logic, by way of this simple act of spite, Christie could legally deprive NINS of any further use of its own Desktop. *Opposition*, p. 9 ("**NINS DID NOT HAVE AUTHORIZATION TO ACCESS THE DESKTOP COMPUTER**"). Again, this

---

[1] Christie cites to *White v. White* for the proposition that "without authorization" "means using a computer from which one has been prohibited, or using another's password or code without permission." 344 N.J. Super. 211, 221 (Ch. Div. 2001). In *White*, at issue was whether one authorized user of a jointly-used family computer had violated the law by reading the electronic communications stored on that computer by a co-owner and co-user. *White* is inapposite as NINS did not share ownership with Christie. In any event, the Court found the defendant in *White* did not violate any law.

7

is a Desktop Christie did not buy and could no longer access, needed for use by an organization with which he no longer worked. The assertion is absurd, and to give it any credence would be dangerous to every business (and non-profit) that provides computers for workplace use.

The owner of a computer can access that computer. The owner is not required to first beg permission from every ex-employee or ex-contractor who had once used it. Christie does not cite to any case in which any Court, federal or State, has ever imposed liability on the owner of a computer for using that computer without first canvassing all former users and begging leave. This Court should decline Christie's dangerous exhortation to invent such a duty from whole cloth and engraft it into the laws of New Jersey.

In Opposition, Christie also goes on and on about other ways that NINS supposedly could have proceeded to obtain clarity with respect to the dates of the Fr. Ker speech. Again, this is wholly irrelevant. The owner of a computer can search that computer for a given document, or for any reason at all. The owner need not exhaust all other potential sources of information before searching its own computer. The owner need not prove exigency or urgency to use its own computer. Christie does not cite to any case, federal or State, which would so restrict the owner of a computer from using it simply because former employees or contractors had once

had access, or because another copy of a record may exist in another place or could be reconstructed in some other way. The Court should decline Christie's invitation to invent such a duty for his benefit.

Christie speculates wildly that NINS must have had some dark ulterior motive in searching its own Desktop, that it did so in some obscure attempt to injure him. These conjectures are incoherent, and supported by no evidence. Christie's work with NINS had already ended well before this search was conducted. There is no evidence that anyone at NINS knew that the Desktop contained copies of r.christie@att.net e-mails. *Cf., Mu Sigma, Inc. v. Affine, Inc.*, No. Civil Action No.: 12-1323 (FLW), 2013 US Dist Lexis 99538 (D.N.J. 2013) at *11 (dismissing claims under CFAA and NJCROA, at the motion to dismiss phase, where those claims lacked the requisite knowledge and purpose). Even if NINS knew there was some risk that the Desktop contained communications that Christie would rather not be unearthed (NINS did not), that would not make any search unreasonable. *See, e.g.*, *Poltrock v. NJ Auto. Accounts Mgmt. Co.*, 2008 U.S. Dist. LEXIS 103351 (D.N.J.)(finding no invasion of privacy in light of the legitimate interests of the business in obtaining needed information).

Christie has made, but not substantiated, a charge of hacking and computer fraud. Now, after all discovery is closed, these bare allegations are entirely

9

unsupported by the facts.  As a matter of uncontested relevant fact and law, NINS was authorized to access its own Desktop.  No reasonable jury could find otherwise.

### C. The Uncontested Facts and The Law As To The Yahoo! Server Support Summary Judgment

Uncontested expert testimony makes clear how e-mails from r.christie@att.net wound up on the NINS Desktop.  As noted in moving papers, NINS retained David J. Peck of SecureWorks as an expert for this matter.  Peck was formerly employed by the Central Intelligence Agency as a Lead Forensic Examiner CIA/CIRT and by the Pennsylvania State Police as a Computer Crime Investigator.  DSUMF ¶ 12.  Peck examined a forensic copy of the Desktop, and provided a report ("Peck Report"), described below.   Christie's expert did not find anything factually inaccurate in the Peck Report.  *DSUMF* ¶ 12 (admitted by Christie).  Hence, the Peck Report, which Christie never mentions in his Motion, is the definition of uncontested evidence.

Peck noted an e-mail of record from June 3, 2015, wherein Christie had asked a NINS employee to help him access his personal e-mail from the NINS Desktop.  *DSUMF* ¶ 28 (more on this below).  Peck noted that starting that very day -- June 3, 2015 -- "the desktop began downloading [e-mail] messages from the remote server

10

hosting r.christie@att.net, in a manner consistent with Christie's request." *Id.*, Peck Report, pp. 14-15.  Thus it is **uncontested**, that:

> Based on the above facts, when the NINS desktop was booted up and the Mail application opened in June of 2016, the Mail application on the NINS desktop would have contained all the fetched e-mails from r.christie@att.net.  NINS was not required to take any purposeful action to download these e-mails, and was not required to establish a connection to the remote server storing the e-mails.  Any access to the remote server, and any retrieval of e-mail messages from that server, was managed by the synchronization that had been set up on June 3, 2015, the same day Christie requested it, and never disabled.  Instead, NINS could view e-mails sent or received using the r.christie@att.net e-mail account without accessing the remote server by accessing copies already stored locally on the NINS Desktop.

Peck Report, p. 17.  Per the uncontested evidence, McIntyre's search returned only copies of those e-mails from the NINS Desktop, in NINS headquarters, where they were stored as a result of Christie's actions of June 3, 2015.

In Opposition, Christie seems to concede that, factually, this chain of events happened prior to the June 16, 2016 search.  Feebly, he objects that "NINS initiated the synchronization of the desktop computer with Christie's e-mail account without notifying Christie that his personal e-mails would be accessible to [sic] continuously accessible to NINS."  *Plaintiff's Cross-Statement of Undisputed Facts*, 1.  But, of course, when Christie says "NINS" did something on June 3, 2015, he means himself.  Christie admits and reaffirms his deposition testimony that at the relevant time he was "responsible for the overall management of the operations at NINS".

11

DSUMF ¶ 4 (admitted by Christie).  Christie, at that time, "directly supervised the NINS staff as they used their computers".  DSUMF ¶ 5 (admitted by Christie).  Christie admits Dorsey was employed by NINS at the time.  DSUMF ¶ 15 (admitted by Christie).  Therefore, Christie directly supervised Dorsey, including on the date of the synchronization.  Everything that happened since, including McIntyre turning on the NINS Desktop on June 16, 2016 and the subsequent automatic synchronization, flowed from what Christie had done.  Christie is not entitled to sue NINS for the consequences of his own action or inaction as the person in charge.

Christie makes two last-ditch efforts to save the relevant claims.  First, he asserts that even had he authorized the synchronization in 2015, he should have reasonably been able to expect it would be terminated when he left.  This fails for two reasons.  There is no record evidence of anyone knowing that Christie's actions in 2015 had set the synchronization in motion, and thus anyone being in a position to terminate them.  *Cf., Coleman, supra*, 2018 U.S. Dist. LEXIS 143190 at \*32-33 (granting summary judgment where "Absent evidence that the City or relevant Defendant-officers were on notice, or should have been on notice, that the course of training was deficient in some respect, they can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights")(citation and quotation marks omitted).

Second, all of the causes of action which Christie asserts turn on intentional hacking or intrusion, not an organization failing to find and clean up automated feeds.

Then, Christie claims that NINS acknowledged the impropriety of the synchronization by ending it after June 16, 2016.  Given that NINS did not know about the synchronization before then, it could hardly have stopped it sooner.  And the stopping of the synchronization *after* it was discovered is totally irrelevant as to what NINS knew and intended beforehand.

Christie loses on these claims.  NINS and Individual Defendants did not hack Yahoo! servers.  No reasonable jury could find otherwise.

## D.   PLAINTIFF'S INVASION OF PRIVACY CLAIM FALLS ON THE SAME BASIS AS ALL OTHER COUNTS

Plaintiff may object that his common law invasion of privacy claim is not a hacking claim *per se*.  Christie's Opposition encourages the Court to think about the r.christie@att.net e-mail account and all of its contents in some abstract, Platonic form.  He speaks as though the information in that account exists in the ether, and strict liability befalls anyone who obtains it, from anywhere, in any form, in any manner.  That is not reality, and it is not the law. In New Jersey, the standard is: "One who *intentionally intrudes*, physically or otherwise, upon the *solitude or*

13

*seclusion* of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (1992). As set forth above, all record evidence shows that NINS could not have intentionally intruded on anything when it searched its own Desktop, in its own headquarters, not knowing that copies of r.christie@att.net e-mails were contained thereon. And, all record evidence shows that NINS did not hack its own Laptop or the Yahoo! servers. All record evidence shows that NINS was simply the unwilling recipient of copies of e-mails stored on a NINS device without NINS permission or knowledge. Christie's claim for invasion of privacy, like all of his claims, cannot survive summary judgment.

## IV.   CONCLUSION

For all these reasons, Defendants request that their Motion for Summary Judgment be granted as to all counts in Christie's Complaint.

Dated:  Philadelphia, PA
        October 29, 2018

14

| **REED SMITH LLP** | **HOLLAND & KNIGHT LLP** |
|---|---|
| Siobhan A. Nolan, Esq.<br>Reed Smith LLP<br>Princeton Forrestal Village<br>136 Main Street, Suite 250<br>Princeton, NJ 08543<br>(609) 524-2058<br>SNolan@reedsmith.com | */s/ Paul J. Bond*<br>Paul J. Bond, Esq.<br>Mark S. Melodia, Esq.<br>Holland & Knight LLP<br>Cira Center<br>2929 Arch Street, Suite #800<br>Philadelphia, PA 19104<br>(215) 252-9535<br>Mark.Melodia@hklaw.com<br>Paul.Bond@hklaw.com |

*Co-Counsel for Defendants*
*The National Institute for Newman Studies,*
*Catharine Ryan and Drew Morgan*